FILED
15-0729
11/10/2015 2:13:55 PM
tex-7766971
SUPREME COURT OF TEXAS
BLAKE A. HAWTHORNE, CLERK

# No. 15-0729

IN THE
SUPREME COURT OF TEXAS

DANIEL E. ARNOLD,

Petitioner

v.

GERARDO GONZALEZ,

Respondent

Appeal from the Thirteenth Court of Appeals, No. 13-13-00440, and the 398th
District Court of Hidalgo County, Texas, Cause No. C-1442-11-I

## PETITION FOR REVIEW

Wade C. Crosnoe
State Bar No. 00783903
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone: (512) 703-5078
Facsimile: (512) 708-8777
E-mail: wcrosnoe@thompsoncoe.com

Robert E. Valdez
State Bar No. 20428100
Jose "JJ" Treviño, Jr.
State Bar No. 24051446
VALDEZ, JACKSON & TREVIÑO, P.C.
1826 North Loop 1604 W, Suite 275
San Antonio, Texas 78248
Telephone: (210) 598-8686
Facsimile: (210) 598-8797

Counsel for Petitioner Daniel E. Arnold

## IDENTITY OF PARTIES AND COUNSEL

1.      Petitioner/Appellant/Defendant Daniel E. Arnold

Trial and Appellate Counsel:

Robert E. Valdez
Jose "JJ" Treviño, Jr.
VALDEZ, JACKSON & TREVIÑO, P.C.[1]
1826 North Loop 1604 W, Suite 275
San Antonio, Texas 78248
Telephone:  (210) 598-8686
Facsimile:  (210) 598-8797
E-mail: revaldez@vjtlawfirm.com
E-mail: jtrevino@vjtlawfirm.com

Appellate Counsel:

Wade C. Crosnoe
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone:  (512) 703-5078
Facsimile:  (512) 708-8777
E-mail:  wcrosnoe@thompsoncoe.com

---

[1] Mr. Valdez and Mr. Treviño joined their current law firm at the conclusion of the trial court proceedings.  They were formerly with the law firm of Ray, Valdez, McChristian & Jeans, P.C.

2. Respondent/Appellee/Plaintiff Gerardo Gonzalez

Trial and Appellate Counsel:

John G. Escamilla
ESCAMILLA LAW FIRM
1416 Dove Avenue
McAllen, Texas 78504
Telephone: (956) 618-4999
Facsimile: (956) 618-4997
E-mail: john@escamillalawfirm.com

Arturo Martinez
LAW OFFICES OF ARTURO MARTINEZ
414 S. Cage Boulevard
Pharr, Texas 78577-5443
Telephone: (956) 781-6203
Facsimile:  (956) 781-6204
E-mail: art@amtzlaw.com

Appellate counsel:

Brandy Wingate Voss
SMITH LAW GROUP, P.C.
820 E. Hackberry Avenue
McAllen, Texas  78501
Telephone:  (956) 683-6330
Facsimile:  (956) 225-0406
E-mail:  brandy@appealsplus.com

ii

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ................................................................ i

TABLE OF CONTENTS ................................................................................ iii

INDEX OF AUTHORITIES.............................................................................v

STATEMENT OF THE CASE ....................................................................... viii

STATEMENT OF JURISDICTION ..................................................................... ix

ISSUES PRESENTED FOR REVIEW ...................................................................x

INTRODUCTION.....................................................................................1

STATEMENT OF FACTS.............................................................................2

    I.     The Ownership of the Accident Site and Equipment ..................................2

    II.    Gonzalez Is Injured While Working for A-W ...........................................2

    III.   Gonzalez Sues Arnold and Prevails in the Lower Courts.............................3

SUMMARY OF THE ARGUMENT .....................................................................5

ARGUMENT ........................................................................................6

    I.     The Act's Exclusive-Remedy Provision Bars Gonzalez's Claim.................6

           A.   *The Governing Statute*............................................................6

           B.   *The Court of Appeals' Erroneous Waiver Holding* ............................7

           C.   *The Dual-capacity Doctrine*.................................................12

    II.    The Trial Court Abused Its Discretion by Refusing to Submit
         Arnold's Requested Jury Question on the Right of Control......................15

PRAYER ...........................................................................................19

CERTIFICATE OF COMPLIANCE ..................................................................20

CERTIFICATE OF SERVICE .......................................................................21

A<span>PPENDIX</span>

Final Judgment ........................................................................................ Tab 1

Charge of the Court ............................................................................... Tab 2

Court of Appeals' Opinion and Judgment....................................... Tab 3

Texas Labor Code § 408.001 ........................................................... Tab 4

Defendant's Requested Jury Question on Right of Control............................ Tab 5

# INDEX OF AUTHORITIES

## Cases

*Arnold v. Gonzalez*, No. 13-13-00440-CV, 2015 WL 5109757
(Tex. App.—Corpus Christi Aug. 28, 2015, pet. filed)... viii, 7, 10, 11, 12, 17

*Austin v. Kroger Tex., L.P.*,
465 S.W.3d 193 (Tex. 2015) .......................................................................18

*Braudrick v. Wal-Mart Stores, Inc.*,
250 S.W.3d 471 (Tex. App.—El Paso 2008, no pet.) ...................................17

*Brown v. Bank of Galveston, N.A.*,
963 S.W.2d 511 (Tex. 1998) .......................................................................10

*Budd v. Punyanitya*,
69 Va. Cir. 148, 2005 WL 4827403 (Va. Cir. Ct. Oct. 14, 2005).................14

*Burkett v. Welborn*,
42 S.W.3d 282 (Tex. App.—Texarkana 2001, no pet.) ......................... 11, 14

*Butcher v. Scott*,
906 S.W.2d 14 (Tex. 1995) .........................................................................18

*City of Keller v. Wilson*,
168 S.W.3d 802 (Tex. 2005) .......................................................................11

*Clayton W. Williams, Jr., Inc. v. Olivo*,
952 S.W.2d 523 (Tex. 1997) .......................................................................19

*Cohn v. Spinks Indus., Inc.*,
602 S.W.2d 102 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.)................13

*Columbia Rio Grande Healthcare, L.P. v. Hawley*,
284 S.W.3d 851 (Tex. 2009) .......................................................................15

*Darensburg v. Tobey*,
887 S.W.2d 84 (Tex. App.—Dallas 1994, writ denied)...............................11

*Davis v. Sinclair Ref. Co.*,
704 S.W.2d 413 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd
n.r.e.) ...........................................................................................................13

*Duncan, Wyatt & Co. v. Taylor*,
  63 Tex. 645 (1885) ...................................................................................12

*Entergy Gulf States, Inc. v. Summers*,
  282 S.W.3d 433 (Tex. 2009) .....................................................................15

*Exxon Corp. v. Tidwell*,
  867 S.W.2d 19 (Tex. 1993) .......................................................................18

*Gore v. Amoco Prod. Co.*,
  616 S.W.2d 289 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ) ........13

*Holt v. Preload Tech., Inc.*,
  774 S.W.2d 806 (Tex. App.—El Paso 1989, no writ)...................................13

*Iliff v. Iliff*,
  339 S.W.3d 74 (Tex. 2011) .......................................................................12

*Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*,
  926 S.W.2d 284 (Tex. 1996) .....................................................................18

*Long v. Turner*,
  871 S.W.2d 220 (Tex. App.—El Paso 1993, writ denied) ...........................12

*McKelvy v. Barber*,
  381 S.W.2d 59 (Tex. 1964) .......................................................................11

*Payne v. Galen Hosp. Corp.*,
  28 S.W.3d 15 (Tex. 2000) ................................................................... 13, 14

*Port Elevator-Brownsville, L.L.C. v. Casados*,
  358 S.W.3d 238 (Tex. 2012) .......................................................................7

*Ramirez v. Pecan Deluxe Candy Co.*,
  839 S.W.2d 101 (Tex. App.—Dallas 1992, writ denied)..............................13

*Rivers v. Otis Elevator*,
  996 N.E.2d 1039 (Ohio Ct. App. 2013) ......................................................14

*Rodriguez v. Bd. of Dir. of Auraria Higher Educ. Ctr.*,
  917 P.2d 358 (Col. App. 1996)...................................................................14

vi

*State Dep't of Highways & Pub. Transp. v. Payne*,
    838 S.W.2d 235 (Tex. 1992) ...........................................................................19

*Suburban Hosp., Inc. v. Kirson*,
    763 A.2d 185 (Md. 2000) .............................................................................14

*T.O. Stanley Boot Co. v. Bank of El Paso*,
    847 S.W.2d 218 (Tex. 1992) .............................................................................9

*Tex. Workers' Comp. Comm'n v. Garcia*,
    893 S.W.2d 504 (Tex. 1995) ...........................................................................15

*Unigard Sec. Ins. Co. v. Schaefer*,
    572 S.W.2d 303 (Tex. 1978) .............................................................................7

*W. Steel Co. v. Altenburg*,
    206 S.W.3d 121 (Tex. 2006) ........................................................................1, 8

**Statutes**

Tex. Gov't Code § 22.001(a)(2), (3), & (6) ............................................................. ix

Tex. Lab. Code § 408.001(a) .........................................................................6, 11

Tex. Lab. Code § 408.001(b) .............................................................................7

**Other Authorities**

A. Larson, *The Law of Workmen's Compensation*,
    Vol. 2A, § 72.81(c) (1988) ...........................................................................14

**Rules**

Tex. R. Civ. P. 277...........................................................................................15

Tex. R. Civ. P. 278...........................................................................................15

Tex. R. Civ. P. 279...........................................................................................10

## STATEMENT OF THE CASE

**Nature of the Case**    Premises-liability lawsuit against the president/owner of plaintiff's employer to recover for a workplace injury (CR[2] 43-53, 66-67).

**Trial Court**    398th Judicial District Court of Hidalgo County, Texas, the Honorable Aida Salinas Flores, Presiding

**Trial Court's Disposition**    After the trial court denied Defendant Daniel Arnold's Motion for Summary Judgment based on the exclusive-remedy provision of the Texas Workers' Compensation Act, the case proceeded to trial (CR.54-62, 120). Based on the jury's findings on liability and damages, the trial court signed a Final Judgment awarding Plaintiff Gerardo Gonzalez $1,976,161.93 in actual damages, prejudgment interest, and costs (CR.124-34, 168-72; Apx. 1, 2).

**Parties in Court of Appeals**    Appellant Daniel Arnold; Appellee Gerardo Gonzalez

**Court of Appeals**    Thirteenth Court of Appeals at Corpus Christi/Edinburg

**Court of Appeals' Disposition**    In a memorandum opinion authored by Chief Justice Valdez and joined by Justices Garza and Perkes, the court of appeals affirmed. *See Arnold v. Gonzalez*, No. 13-13-00440-CV, 2015 WL 5109757 (Tex. App.—Corpus Christi Aug. 28, 2015, pet. filed) (Apx. 3). Neither party filed a motion for rehearing or motion for en banc reconsideration.

---

[2] "CR" refers to the Clerk's Record. Other abbreviations in this Petition for Review include "RR" (Reporter's Record), "Apx." (Appendix to this Petition), "PEX" (Plaintiff's Exhibit), "DEX" (Defendant's Exhibit), and "Ct. Ex." (Court Exhibit). Although the deposition transcript cited herein is labeled as a court exhibit, a video of designated parts of the deposition was played at trial with the parties agreeing that the transcript and designation would be included in the record in lieu of the court reporter transcribing the video testimony (11.RR.100-01). Cites to the Reporter's Record are in the following format: [volume number].RR.[page number].

## STATEMENT OF JURISDICTION

This Court has jurisdiction because (1) the court of appeals held differently from prior decisions of other courts of appeals and this Court on questions of law material to a decision of the case; (2) the case involves the construction of statutes necessary to a determination of the case; and (3) the court of appeals committed errors of such importance to the state's jurisprudence that they require correction. *See* Tex. Gov't Code § 22.001(a)(2), (3), and (6).

## ISSUES PRESENTED FOR REVIEW

1.      Can an employee who is injured in a workplace accident, and who recovers workers' compensation benefits from his employer's carrier, circumvent the exclusive-remedy provision of the Texas Workers' Compensation Act by suing the employer's president/owner in his alleged capacity as the premises owner rather than as a co-employee? In other words, should this Court adopt the "dual capacity" doctrine that has been overwhelmingly rejected by courts in Texas and across the country?

2.      Does a court of appeals err by holding that a co-employee/agent waived his exclusive-remedy defense by failing to obtain a finding that he was acting in the course and scope of his employment/agency when: (a) the plaintiff never raised that argument in either the trial court or court of appeals; (b) the issue was undisputed and the evidence conclusively established that fact; and (c) the exclusive-remedy provision does not, by its express terms, require such a finding?

3.      Can a trial court properly refuse to submit the defendant's proposed right-of-control question in a premises-liability case on the basis that control is only relevant when there is evidence of an independent contractor's involvement? Isn't right of control always at issue in premises-liability cases?

**Unbriefed Issue**

4.      Can a defendant be jointly and severally liable under the proportionate-liability statute for the portion of the plaintiff's damages that the jury finds were caused by the plaintiff's employer, even though the plaintiff's recovery from the employer is barred by the Act's exclusive-remedy provision?

## INTRODUCTION

This appeal arises from a (so far) successful attempt to circumvent the exclusive-remedy provision of the Texas Workers' Compensation Act (the Act). After suffering a workplace injury and collecting workers' compensation benefits from his employer, Gerardo Gonzalez sued Danny Arnold—the president and owner of Gonzalez's employer—to recover for the same injury. Gonzalez argued that his claim was not barred by the Act because he was suing Arnold solely in his capacity as the premises owner. Arnold responded that Texas courts have overwhelmingly rejected this "dual capacity" theory of liability.

Uneager to confront that issue, the court of appeals held that Arnold waived his exclusive-remedy defense by failing to obtain a jury finding on whether *he* was acting in the course and scope of his employment. The court so held even though (1) Gonzalez never raised that waiver theory on appeal, (2) the issue was undisputed, (3) the evidence conclusively established course and scope, and (4) the exclusive-remedy provision does not, in any event, require such a finding. This waiver holding conflicts with *Western Steel Co. v. Altenburg*, where this Court reversed the same court for using similar logic to affirm a judgment against a subscribing employer. Because the court of appeals erred in avoiding the dual-capacity doctrine issue, the important question of whether that doctrine can open a gaping hole in the Act's exclusive-remedy provision is squarely before this Court.

1

## I. The Ownership of the Accident Site and Equipment

This lawsuit arises from a workplace accident at a warehouse operated by A-W in Weslaco, Texas (7.RR.6). The warehouse processes and packages farm produce for shipping and sale (7.RR.74).

Danny Arnold is employed as the President of A-W and owns the company with his wife (7.RR.23-24, 48, 75, 90; 8.RR.13; 13.RR.36; PEX 1). Arnold individually owns the warehouse but leases it to A-W in exchange for annual rent payments of $84,000 (7.RR.6-10, 20, 24-25). A-W is responsible for maintenance and care of the property under the oral lease (7.RR26, 36-37). A-W also owns the equipment in the warehouse, including the conveyor-belt system used to process produce (7.RR.32; 8.RR.13; 18.RR.68; 19.RR.111).

## II. Gonzalez Is Injured While Working for A-W

Gonzalez was hired by A-W in 2009 (14.RR.26-28). His job was to perform maintenance on forklifts and to help Jesus Montelongo, another A-W employee who maintained the conveyor-belt system (13.RR.36-37; 14.RR.22-24; 16.RR.66).

On February 1, 2010, Gonzalez was helping Montelongo work on a section of the conveyor belt that was not yet in operation (8.RR.38, 46; 13.RR.40; 16.RR.71-77). Arnold was not in the facility that morning and did not instruct Gonzalez on what to do (8.RR.22; 13.RR.40; 16.RR.70-72). Although a guard

would have been added to the conveyor belt once it was operational, the belt had no guard at that time (8.RR.46).

Gonzalez was aware that if he put his hand near a moving part in a conveyor belt, it could get caught and he would be injured (16.RR.89-91; DEX 13-14). Nevertheless, Gonzalez reached for a wrench that he claimed had fallen onto the conveyor belt, without asking Montelongo to stop the moving conveyor first (16.RR.80-86; 17.RR.21-22). Gonzalez's right hand and arm were pulled into the conveyor-belt rollers and injured (15.RR.12).

Gonzalez was treated for a compression injury to and fractures in his right forearm (11.RR.22). His medical care and indemnity benefits were paid by A-W's workers' compensation carrier (6.RR.6-8; CR.66-67).

## III. Gonzalez Sues Arnold and Prevails in the Lower Courts

After collecting workers' compensation benefits, Gonzalez sued A-W's President and owner, Danny Arnold (CR.27-35). Gonzalez asserted premises-liability claims based on Arnold's alleged failure to maintain the property and equipment that he owned and controlled (CR.47-49).

The trial court denied Arnold's motion for summary judgment based on the Act's exclusive-remedy provision (CR.54-81, CR.120). Before trial the parties stipulated that (1) Gonzalez was acting in the course and scope of his employment with A-W when the accident occurred, (2) A-W was a subscriber to the Act at the

3

time, and (3) Gonzalez applied for and received workers' compensation benefits from A-W's carrier (6.RR.6-8).

At trial the court denied Arnold's motion for directed verdict and charge objections based on the Act's exclusive-remedy provision (17.RR.78-80; 20.RR.17-18). Despite submitting premises-liability instructions to the jury, the court also denied Arnold's proposed jury question on whether he, individually, exercised or retained control over the manner in which the work was performed (CR.121-25; 20.RR.7-17; Apx. 5).

The jury found that Gonzalez, Arnold, and A-W were negligent and attributed responsibility as follows: 65% to Arnold, 20% to A-W, and 15% to Gonzalez (CR.128-29; Apx. 2). The jury also awarded Gonzalez $2,615,000 in damages (CR.130-31; Apx. 2). After signing a Final Judgment awarding Gonzalez nearly $2 million, the trial court denied Arnold's Motion for Judgment Notwithstanding the Verdict (J.N.O.V. motion) based on the exclusive-remedy provision, and Motion for New Trial (CR.168-94, 200-01; Apx. 1). The court of appeals affirmed without reaching the merits of Arnold's exclusive-remedy defense, based on his "failure" to obtain a jury finding that he was acting in the course and scope of his employment (Apx. 3).

## SUMMARY OF THE ARGUMENT

This lawsuit is an end run around one of the pillars of the Texas Workers' Compensation Act. The Act's exclusive-remedy provision bars an employee from suing a subscribing employer—and also the employer's agents and employees—for a work-related injury. It is undisputed that Gonzalez was working as an employee of A-W when he was injured, and that Gonzalez received workers' compensation benefits from A-W's carrier. Nor is there any dispute that Arnold, as A-W's president, was an employee or agent of A-W. Under the Act's plain language, Gonzalez's claim against Arnold is barred.

The court of appeals dodged this issue by holding that Arnold waived his exclusive-remedy defense because he failed to obtain a jury finding that he was acting in the course and scope of his employment. But Gonzalez never raised that argument in the court of appeals, the issue was undisputed and conclusively established by the evidence, and, in any event, the statute's unambiguous terms do not require such a finding. The court thus should have addressed the issue the parties briefed, which is whether Arnold lost the protection of the exclusive-remedy provision when he was sued in his allegedly separate capacity as the premises owner. Because the statute contains no "dual capacity" exception and courts in Texas and across the country have overwhelmingly rejected the dual-capacity doctrine, this Court should rule that the doctrine is not the law in Texas.

The Court should also reverse and render judgment against Gonzalez for a separate reason. Under this Court's precedent, Arnold's individual right-of control over the premises was an essential element of Gonzalez's claims. Indeed, Gonzalez pleaded, presented evidence on, and argued the control issue. Yet he then successfully blocked Arnold's request to submit that issue to the jury. When, as here, an essential element of a claim is omitted from the charge and the party without the burden of proof requests its submission, judgment must be rendered in that party's favor.

## ARGUMENT

## I. The Act's Exclusive-Remedy Provision Bars Gonzalez's Claim

### A. *The Governing Statute*

The Act's exclusive-remedy provision states:

> Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

Tex. Lab. Code § 408.001(a) (Apx. 4).

For our purposes, there are three crucial points about this statute. First, it states that both the employer *and* the employer's employees and agents are protected. Second, it does not require that the employer's employee or agent be acting within the course and scope of that employment or agency.

6

Third, the statute contains no exception for when an employer (or the employer's agent or employee) is allegedly acting in a separate capacity—for instance, as a premises owner. The statute applies to an employer and its agents or employees, without qualification. The only exception in the statute does not apply here. *See* Tex. Lab. Code § 408.001(b) (allowing recovery of exemplary damages for the death of an employee). Accordingly, a dual-capacity exception cannot be read into the statute. *See Port Elevator-Brownsville, L.L.C. v. Casados*, 358 S.W.3d 238, 241 (Tex. 2012) (concluding that the exclusive-remedy provision barred a worker's suit against his employer because the provision's lone exception did not apply); *see also Unigard Sec. Ins. Co. v. Schaefer*, 572 S.W.2d 303, 307 (Tex. 1978) ("When specific exclusions or exceptions to a statute are stated by the Legislature, the intent is usually clear that no others shall apply.")

### B. The Court of Appeals' Erroneous Waiver Holding

Arnold raised the exclusive-remedy defense at every possible stage of the trial-court proceedings: pretrial, trial, and post-trial (CR.54-81, 120, 187-94, 201; 17.RR.78-80; 20.RR.17-18). Despite this, the court of appeals held that Arnold waived the defense by not obtaining a jury finding on whether he was acting in the course and scope of his employment. *Arnold v. Gonzalez*, No. 13-13-00440-CV, 2015 WL 5109757, at *3-5 (Tex. App.—Corpus Christi Aug. 28, 2015, pet. filed) (Apx. 3). But there is a series of problems with this holding.

7

The first is that Gonzalez never made this argument in his appellate briefing or even in opposition to Arnold's J.N.O.V. motion (22.RR.1-22).[3] To be sure, Gonzalez raised a separate waiver argument in his appellate brief, asserting that Arnold should have obtained a jury finding that he was an employee or agent of A-W. But the court of appeals did not affirm on that basis, presumably because (1) the evidence conclusively established Arnold's status as an employee and agent of A-W (7.RR.23-24, 48, 75, 90; 8.RR.13; 13.RR.36; PEX 1 at 6), and (2) Gonzalez had judicially admitted Arnold's agent status (3.RR.20; CR.91). The court instead affirmed based on an unraised argument, concluding that Arnold should have obtained a finding that he was within the course and scope of his undisputed employment/agency.

This case is thus eerily similar to another exclusive-remedy case where this Court reversed the same court of appeals. *See W. Steel Co. v. Altenburg*, 206 S.W.3d 121 (Tex. 2006). In *Altenburg*, the Thirteenth Court affirmed a judgment against a workers' compensation subscriber after concluding that the exclusive-remedy provision did not apply because there was no evidence of workers' compensation insurance. *Id.* at 123. But this Court reversed, noting that the plaintiff had never disputed the existence of workers' compensation insurance. *Id.* at 124. The Court also emphasized: "[A]bsent fundamental error, an appellate

---

[3] This citation is to the reporter's record of the hearing on the motion. Gonzalez did not file a written opposition to the motion.

8

court should refrain from deciding cases on legal errors not assigned by the parties." *Id.* Yet the same court of appeals did the same thing here. In the words of the late Yogi Berra, "it's déjà vu all over again."[4]

The second problem with the waiver holding is that a jury finding is not required when an issue is undisputed. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222-23 (Tex. 1992). On the record before trial, Arnold's counsel proposed the following stipulations on his exclusive-remedy defense: (1) Gonzalez was employed by A-W; (2) he was injured in the course and scope of his employment; (3) A-W was a subscriber; (4) Gonzalez received benefits from A-W's carrier; (5) Arnold was an A-W employee; and (6) both Arnold and Gonzalez were A-W employees (6.RR.6-8). Gonzalez's counsel agreed to the stipulations except the last two, explaining that he did not agree Arnold was an employee in all respects (6.RR.6-7). Arnold's counsel then requested clarification that "the issue of Mr. Arnold being an employee of A-W Company, Inc. is the only disputed fact in that regard?" Gonzalez's counsel responded: "The last two stipulations" (20.RR.7-8).

Based on these stipulations and Gonzalez's clarification that the only disputed fact was Arnold's status as an A-W employee, the separate issue of

---

[4] *See* http://yogiberramuseum.org/just-for-fun/yogisms. As Yogi also purportedly stated, however, "I really didn't say everything I said." *See* https://en.wikipedia.org/wiki/Yogi_Berra.

whether Arnold was acting in the course and scope of his employment was not disputed. This is consistent with the fact that Gonzalez never argued in the court of appeals—or at any point in the trial-court proceedings—that Arnold was required to prove or obtain a jury finding on the course-and-scope issue. The court of appeals therefore erred in affirming based on the lack of a finding on this undisputed issue.

The third problem with the waiver holding is that no jury finding is required when the evidence conclusively establishes the fact. *See* Tex. R. Civ. P. 279; *Brown v. Bank of Galveston, N.A.*, 963 S.W.2d 511, 515 (Tex. 1998). Arnold presented undisputed evidence that the conveyor-belt system which injured Gonzalez was owned by A-W, and that Arnold's actions in setting up and maintaining that system were taken in his capacity as the president of A-W (7.RR.32, 52, 90; 8.RR.13; 10.RR.25-26, 64-65, 70; 18.RR.68; 19.RR.111; PEX 34).

The court of appeals identified no specific conflicting evidence, instead claiming that *Arnold's* credibility was at issue because of allegedly contradictory statements on the separate issue of whether he owned the warehouse. *See Arnold*, 2015 WL 5109757, at *4-5 (Apx. 3). But the undisputed testimony on the course-and-scope issue came from multiple witnesses, including one of Gonzalez's experts. And the jury's authority to make credibility determinations cannot be used

10

as a guise to "ignore undisputed testimony that is clear, positive, direct, otherwise credible, free from contradictions and inconsistencies, and could have been readily controverted." *City of Keller v. Wilson*, 168 S.W.3d 802, 820 (Tex. 2005).

Finally, the exclusive-remedy provision expressly protects subscribing employers—and their employees and agents—from common-law claims for work-related injuries. Tex. Lab. Code § 408.001(a). Conspicuously absent from the statute is any requirement that the co-employee or agent must have acted in the course and scope.

As the court of appeals noted, some courts have interpreted the statute to protect only a co-employee for whose conduct the employer is liable under the doctrine of respondeat superior—that is, an employee acting within the course and scope of employment and in furtherance of the employer's interests. *Arnold*, 2015 WL 5109757, at *2 (citing, e.g., *Burkett v. Welborn*, 42 S.W.3d 282, 288-89 (Tex. App.—Texarkana 2001, no pet.); *Darensburg v. Tobey*, 887 S.W.2d 84, 86-87 (Tex. App.—Dallas 1994, writ denied)). But *Burkett* cited to *Darensburg*, which in turn cited *McKelvy v. Barber*, 381 S.W.2d 59, 62 (Tex. 1964). *McKelvy* addressed a prior version of the exclusive-remedy provision. The distinct issue in *McKelvy* was whether a physician with his own medical practice was protected by the exclusive-remedy provision as the employer's agent/employee because the employer's workers' compensation carrier paid him to treat the injured employee.

11

*Id.* at 62-63. The right-of-control analysis in *McKelvy* should not apply when, as here, it is undisputed that Arnold is the president and an employee of A-W. *See Long v. Turner*, 871 S.W.2d 220, 224 (Tex. App.—El Paso 1993, writ denied) (distinguishing *McKelvy* where both the plaintiff and defendant were regular employees of the same employer).

It is well settled that courts "have no right to engraft upon [a] statute any conditions or provisions not placed there by the legislature." *Iliff v. Iliff*, 339 S.W.3d 74, 80-81 (Tex. 2011) (quoting *Duncan, Wyatt & Co. v. Taylor*, 63 Tex. 645, 649 (1885)). The court of appeals erred by imposing a requirement in the exclusive-remedy provision that the defendant employee/agent must be acting within the course and scope.

For each of these reasons, the court erred in holding that Arnold waived his exclusive-remedy defense and, consequently, finding it unnecessary to address the dual-capacity issue. *Arnold*, 2015 WL 5109757, at *5 n.4 (Apx. 3). That issue is necessary to the disposition of this appeal and should be decided by this Court.

### C. The Dual-capacity Doctrine

The dual-capacity doctrine is the theory that a workers' compensation subscriber can be liable in tort to an employee "if it occupies, in addition to its capacity as an employer, a second capacity that confers on it obligations independent of those imposed on it as an employer." *Payne v. Galen Hosp. Corp.*,

12

28 S.W.3d 15, 20 (Tex. 2000). The doctrine is not supported by the governing statute's plain language, which contains no dual-capacity exception. Not only that, courts in and outside Texas have overwhelmingly refused to adopt it.

As this Court observed in *Payne*, "Texas courts of appeals have uniformly rejected the dual-capacity doctrine." *Id.* at 20 n.4. Those courts have done so in a variety of contexts. *See Ramirez v. Pecan Deluxe Candy Co.,* 839 S.W.2d 101, 107-08 (Tex. App.—Dallas 1992, writ denied) (strict-liability claim); *Holt v. Preload Tech., Inc.,* 774 S.W.2d 806, 807–08 (Tex. App.—El Paso 1989, no writ) (professional-liability/negligence claim); *Davis v. Sinclair Ref. Co.*, 704 S.W.2d 413, 415-16 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.) (claim for contractually-assumed liability); *Cohn v. Spinks Indus., Inc.*, 602 S.W.2d 102, 104 (Tex. Civ. App.—Dallas 1980, writ ref'd n.r.e.) (strict-liability claim). One Texas court has even rejected the doctrine in the premises-liability context presented here. *See Gore v. Amoco Prod. Co.,* 616 S.W.2d 289, 290 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ).

The doctrine has generally fared no better in other states, flourishing only briefly in the late 1970s/early 1980s in two states: California and Ohio. *See Holt*, 774 S.W.2d at 807-08 (citing A. Larson, *The Law of Workmen's Compensation*,

13

Vol. 2A, § 72.81(c) (1988)). As noted in *Payne*, most other states have rejected the doctrine, and that trend has continued since *Payne*.[5]

The *Payne* Court found it unnecessary to decide whether to follow the uniform Texas law and nationwide majority rule, concluding that the dual-capacity doctrine would not have applied even if the Court were to adopt it. *Payne*, 28 S.W.3d at 20-21. Perhaps taking the wrong signal from this Court's restraint, the Texarkana Court of Appeals subsequently held that (1) the president of a subscribing corporation could be liable for an employee's work-related injury in the president's separate capacity as the premises owner, and (2) the discredited dual-capacity doctrine supposedly was not implicated because the president was not the employer. *See Burkett v. Welborn*, 42 S.W.3d 282, 288-89 (Tex. App.—Texarkana 2001, no pet.). Gonzalez relied heavily on *Burkett* in the lower courts and, like the *Burkett* court, insisted that his argument did not implicate the dual-capacity doctrine. But the *Payne* Court rejected a similar argument. *Payne*, 28 S.W.3d at 20 ("Despite Payne's protestations to the contrary, her argument raises the dual-capacity doctrine.").

---

[5] *Payne* contains a lengthy footnote discussing the majority of other jurisdictions that had rejected the dual-capacity doctrine. 28 S.W.3d at 20 n.4. The authorities cited therein as rejecting the dual-capacity doctrine are still good law. Furthermore, three of the four minority jurisdictions listed in the footnote have either overturned the doctrine since *Payne*, or limited it before or after *Payne*. *See Suburban Hosp., Inc. v. Kirson*, 763 A.2d 185, 202-03 (Md. 2000); *Rivers v. Otis Elevator*, 996 N.E.2d 1039, 1043-44 (Ohio Ct. App. 2013); *Rodriguez v. Bd. of Dir. of Auraria Higher Educ. Ctr.*, 917 P.2d 358, 360-61 (Col. App. 1996). And at least one jurisdiction not mentioned in *Payne* has since rejected the dual-capacity doctrine. *See Budd v. Punyanitya*, 69 Va. Cir. 148, 2005 WL 4827403, at *3 (Va. Cir. Ct. Oct. 14, 2005).

In light of the obvious conflict between *Burkett* and the Texas cases cited above, this Court should grant review and clarify whether Texas recognizes the dual-capacity doctrine. Clarity on this issue is especially critical given our state's strong public policy favoring workers' compensation coverage, *see Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 440 (Tex. 2009), and given that the main inducement for employers to obtain such coverage is the protection of the exclusive-remedy provision, *see Tex. Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 511, 521 (Tex. 1995). Court-created exceptions to the exclusive-remedy provision will inevitably weaken employers' incentive to purchase coverage, thereby preventing employees from receiving immediate medical care and compensation for injuries. Surely that is not what the Legislature intended.

## II. The Trial Court Abused Its Discretion by Refusing to Submit Arnold's Requested Jury Question on the Right of Control

A trial court "shall give such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855 (Tex. 2009). The same rules apply to jury questions. *See* Tex. R. Civ. P. 278 (stating that the court shall submit the questions that are in the form required by rule 277 and raised by the pleadings and evidence).

15

In support of his premises-liability claim, Gonzalez pleaded that Arnold had control or a right of control over both the warehouse and the conveyor-belt system (CR.45-48). The control issue was one of the main disputed issues at trial.

Arnold testified that although he owned the warehouse, he leased the property to A-W and A-W was responsible for its maintenance and care (7.RR.6-10, 20-26, 36-37). He also presented evidence that A-W owned the equipment at the property, including the conveyor-belt system, and that his actions in setting up and maintaining that system were undertaken in his capacity as president of A-W (7.RR.32, 52, 90; 8.RR.13; 10.RR.25-26, 64-65, 70; 18.RR.68; 19.RR.111; PEX 34). Furthermore, the jury heard testimony that Arnold was not at the warehouse facility when the accident occurred (8.RR.22; 13.RR.40; 16.RR.70-72), and that Gonzalez was under the supervision of other A-W employees (7.RR.68-69; 13.RR.39-40; 16.RR.71-77).

For his part, Gonzalez questioned the existence of the oral lease at every turn (7.RR.7-37; Ct. Ex. 1 at 6-7, 24, 32-34, 44). He also presented testimony that Arnold goes to the warehouse regularly and that he, in his role with A-W, authorized employees to move the conveyor belt (7.RR.51-52). Moreover, Gonzalez elicited testimony from Arnold that he designed the conveyor-belt at the warehouse (7.RR.52-58; 8.RR.13).

Despite pleading and presenting evidence on the control issue, Gonzalez inexplicably opposed Arnold's proposed jury question on right of control (20.RR.7-17). Gonzalez's counsel persisted in doing so after the trial court observed that "there was a lot of evidence as to who was in control" (20.RR.8). He ultimately persuaded the trial court to refuse the proposed question, despite the court wondering whether Gonzalez should be concerned about reversal on appeal (20.RR.14-17; CR.121-23; Apx. 5). Strangely, Gonzalez's counsel then argued the control issue during closing argument (20.RR.34-46, 80).

Arnold's proposed question was supported by the pleadings and evidence and was based on Texas Pattern Jury Charges (TPJC) 66.3[6], which is the only right-of-control question in the TPJC for common-law, premises-liability claims. But the court of appeals concluded that the question was improper because TPJC 66.3 only applies in cases involving independent contractors. *Arnold*, 2015 WL 5109757, at *6-7 (Apx. 3) (citing *Braudrick v. Wal-Mart Stores, Inc.*, 250 S.W.3d 471, 476 (Tex. App.—El Paso 2008, no pet.)).

The court of appeals' legal analysis of this issue is startlingly superficial. The *Braudrick* case does not say that TPJC 66.3 only applies in cases involving independent contractors, and the court in fact held that the trial court did not err in submitting a question based on TPJC 66.3. *Braudrick*, 250 S.W.3d at 475-77.

---

[6] Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Malpractice, Premises & Products* PJC 66.3 (2014).

And although the comment to TPJC 66.3 indicates that the question is a predicate to the liability question in common-law cases involving independent contractors, it does not say that is the only appropriate use. TPJC 66.3 cmt.

Right of control is an issue in every premises-liability case. *See Butcher v. Scott*, 906 S.W.2d 14, 15 (Tex. 1995) ("In order to be held liable as an owner or occupier, a party must be in control of the premises.") It is also specifically at issue when, as here, there is evidence that the owner leased the premises. *See Johnson Cnty. Sheriff's Posse, Inc. v. Endsley*, 926 S.W.2d 284, 285 (Tex. 1996); *Exxon Corp. v. Tidwell*, 867 S.W.2d 19, 21 (Tex. 1993). And "[o]nly an employer that has control over the premises where the employee is injured has a premises-liability duty to the employee . . . ." *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 216 (Tex. 2015). Thus, to the extent the court of appeals suggested that right of control is not at issue unless an independent contractor is involved, that ruling conflicts with this Court's precedent.

If the court of appeals instead meant that the specific wording of TPJC 66.3 would not apply in other types of premises-liability cases, the court did not explain why that is so or what wording in the question would need to change. Nor did Gonzalez argue at the charge conference that the wording of the right-of-control question would have to be altered (20.RR.7-17). Indeed, Arnold's proposed

18

question did not mention anything about independent contractors at all (CR.121; Apx. 5). Thus, the trial court erred by refusing to submit the control question.

When, as here, the jury charge omits an essential element of a claim and the party without the burden of proof objects or requests submission of that element, judgment must be rendered in that party's favor. *See, e.g., State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992) (rendering judgment against plaintiff on premises-defect claim where the charge omitted an essential element and the State objected to that omission by requesting a jury question); *see also Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527-30 (Tex. 1997) (reversing and rendering judgment against plaintiff based on his failure to obtain jury findings on premises-defect or right-of-control elements). Alternatively, this error at minimum necessitates a new trial.

## PRAYER

Arnold respectfully requests that the Court grant review, reverse the lower courts' judgments, and render judgment that Gonzalez take nothing or, alternatively, reverse and remand for a new trial or, alternatively, modify the Final Judgment to delete the joint-and-several-liability provision. Arnold also requests all other relief to which he is entitled, including an award of his costs.

19

Respectfully submitted,

/s/ Wade Crosnoe
Wade C. Crosnoe
State Bar No. 00783903
THOMPSON, COE, COUSINS & IRONS, L.L.P.
701 Brazos, Suite 1500
Austin, Texas 78701
Telephone: (512) 703-5078
Facsimile: (512) 708-8777
E-mail: wcrosnoe@thompsoncoe.com

and

Robert E. Valdez
State Bar No. 20428100
Jose "JJ" Treviño, Jr.
State Bar No. 24051446
VALDEZ, JACKSON & TREVIÑO, P.C.
1826 North Loop 1604 W, Suite 275
San Antonio, Texas 78248
Telephone: (210) 598-8686
Facsimile: (210) 598-8797
E-mail: revaldez@vjtlawfirm.com
E-mail: jtrevino@vjtlawfirm.com

Counsel for Petitioner Daniel E. Arnold

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Tex. R. App. P. 9.4(i)(2)(D) because it contains 4,158 words, excluding the parts of the brief exempted by Tex. R. App. P. 9.4(i)(1).

/s/ Wade Crosnoe
Wade Crosnoe

20

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Petition for Review was served on November 10, 2015, via electronic filing service or email to the following counsel:


John G. Escamilla
ESCAMILLA LAW FIRM
1416 Dove Avenue
McAllen, Texas 78504
Email: john@escamillalawfirm.com
*Counsel for Respondent Gerardo Gonzalez*

Arturo Martinez
LAW OFFICES OF ARTURO MARTINEZ
414 S. Cage Boulevard
Pharr, Texas 78577-5443
Email: art@amtzlaw.com
*Counsel for Respondent Gerardo Gonzalez*

Brandy Wingate Voss
SMITH LAW GROUP, P.C.
820 E. Hackberry Avenue
McAllen, Texas  78501
E-mail:  brandy@appealsplus.com
*Counsel for Respondent Gerardo Gonzalez*


/s/ Wade Crosnoe
Wade Crosnoe

# APPENDIX

# APPENDIX
# Tab 1

| | | |
|---|---|---|
| GERARDO GONZALEZ | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| VS. | § | 398TH JUDICIAL DISTRICT |
| | § | |
| DANIEL E. ARNOLD, | § | |
| *Defendant* | § | HIDALGO COUNTY, TEXAS |

## FINAL JUDGMENT

BE IT REMEMBERED that on April 15, 2013, came on to be heard the above-entitled and numbered cause, and Plaintiff Gerardo Gonzalez appeared in person and by and through his attorneys of record and announced ready for trial, and Defendant Daniel E. Arnold appeared through his attorneys of record and announced ready for trial, and after general voir dire, and a jury having been previously demanded, a jury of twelve good and lawful men and women, who being duly empanelled and sworn, and after hearing the opening statements, the evidence, the Charge of the Court and the arguments of counsel, returned its verdict to the Court on the 25th day of April, 2013, ten of the jurors agreeing to all parts of the verdict, and no objection being made as to the receipt of the verdict, the verdict was received by the Court and filed among the papers of this cause and the jury was discharged.

The Charge of the Court, including the questions and the verdict of the jury, are incorporated herein for all purposes by reference. It appearing to the Court, based on the pleadings, stipulations, admissions, evidence and verdict of the jury that the following judgment is proper and should be entered:

168

1. THE COURT FINDS, based on the answers to Question No. 1, that the jury found Daniel E. Arnold, AW Produce Co. and Gerardo Gonzalez were negligent, and that such negligence was the cause of Plaintiff's injuries.

2. THE COURT FINDS, based on the answers to Question No. 2, that the jury assessed comparative responsibility for the occurrence in question as follows: sixty-five percent (65%) to Daniel E. Arnold; twenty percent (20%) to AW Produce Co.; fifteen percent (15%) to Gerardo Gonzalez; zero percent (0%) to L&M Companies, and zero percent (0%) to Stephen Miller d/b/a MECO Ventures.

3. THE COURT FINDS, based on the answers to Question No. 3, that the jury found damages of Gerardo Gonzalez, arising from the occurrence in question, are as follows: $600,000.00 for past physical pain; $200,000.00 for physical pain that, in reasonable probability, will be sustained in the future; $600,000.00 for mental anguish sustained in the past; $150,000.00 for mental anguish that, in reasonable probability, will be sustained in the future; $50,000 for lost wages in the past, $465,000.00 for loss of earning capacity that, in reasonable probability, will be sustained in the future; $200,000.00 for physical impairment in the past, $100,000.00 for physical impairment that, in reasonable probability, will be sustained in the future; and $250,000.000 for disfigurement in the past.

4. THE COURT FINDS that the total damage award to Gerardo Gonzalez was Two Million Six Hundred Fifteen Thousand and no/100 ($2,615,000.00), and that Daniel E. Arnold, being 65% responsible for the occurrence, is jointly and severally liable for the entire damages awarded to Gerardo Gonzalez by the jury in its answers to Question No. 3.

5. THE COURT FINDS that, pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b), this award should be reduced by fifteen percent (15%), *i.e.* by a total of Three

Hundred Ninety Two Thousand, Two Hundred Fifty and no/100 ($392,250.00), based on the jury's answer to Question no. 2, and

6. THE COURT FINDS that after said reductions, Gerardo Gonzalez's past damages recoverable against Daniel E. Arnold are One Million Four Hundred Forty Five Thousand and 00/100 Dollars ($1,445,000.00), that Gerardo Gonzalez's future damages recoverable against Daniel E. Arnold are Seven Hundred Seventy Seven Thousand Seven Hundred Fifty and 00/100 Dollars ($777,750.00), which make the total award of damages Two Million Two Hundred Twenty Two Thousand Seven Hundred Fifty and no/100 ($2,222,750.00).

7. THE COURT FINDS that pursuant to the Texas Finance Code §§ 304.103 & 304.104, prejudgment interest to be paid by Defendant Daniel E. Arnold should be calculated for the Plaintiff's past actual damages at five percent (5%), simple interest, from the date Plaintiff first filed suit against Defendant (May 27, 2011) until the day before the judgment is entered by this Court (May 21, 2013), or seven hundred twenty five (725) days.

8. THE COURT FINDS that prejudgment interest for these past damages is One Hundred Sixty Eight Thousand, Eight Hundred Thirty Five and 61/100 Dollars ($168,835.61), with prejudgment interest accruing at $232.87 per day.

9. THE COURT FURTHER FINDS that Defendant Arnold receive a credit pursuant to Tex. Civ. Prac. & Rem. Code Ann. § 33.012(b).

10. THE COURT FINDS that Plaintiff Gerardo Gonzalez is the prevailing party and that, as such, he is entitled to have 100% of his recoverable costs of court to be paid by Daniel E. Arnold.

11. THE COURT FINDS that Plaintiff Gerardo Gonzalez has demonstrated recoverable court costs in the amount of Nine Thousand Five Hundred Seventy Six and 32/100 ($9,576.32).

12. THE COURT FINDS that Geraldo Gonzalez is entitled to total damages award against Daniel E. Arnold in the amount of One Million Nine Hundred Sixty Six Thousand Five Hundred Eighty Five and 61/100 Dollars ($1,966,585.61), plus costs in the amount of Nine Thousand Five Hundred Seventy Six and 32/100 ($9,576.32), for a total judgment of One Million Nine Hundred Seventy Six Thousand One Hundred One and 93/100 Dollars ($1,976,161.93).

It is therefore ORDERED, ADJUDGED, and DECREED:

13. That Plaintiff Geraldo Gonzalez be, and is, hereby awarded a judgment of and against Daniel E. Arnold in the amount of One Million Nine Hundred Seventy Six Thousand One Hundred One and 93/100 Dollars ($1,976,161.93).

14. That Geraldo Gonzalez's damages, factoring in pre-judgment interest, shall total One Million Nine Hundred Sixty Six Thousand Five Hundred Eighty Five and 61/100 Dollars ($1,966,585.61.00).

15. That 100% of Plaintiff Gerardo Gonzalez's recoverable costs are adjudged against Daniel E. Arnold.

16. That Plaintiff Gerardo Gonzalez's recoverable costs total Nine Thousand Five Hundred Seventy Six and 32/100 ($9,576.32).

17. That the above and foregoing judgment shall bear interest at the rate of five percent (5%) per annum, compounded annually, from the date of this judgment until paid, pursuant to Tex. Finance Code §§ 304.003 & 304.006.

18. That Plaintiff Gerardo Gonzalez has execution and ALL other writs and processes for the enforcement and collection of this judgment and for costs of court as may be necessary or proper to collect the same.

19. This judgment finally disposes of all parties to this lawsuit and of all claims asserted by any party in all pleadings, and is a final, appealable judgment.

SIGNED and ENTERED this 22nd day of May 2013.

_Aida Salinas Flores_
THE HONORABLE AIDA SALINAS FLORES

# APPENDIX
# Tab 2

FILED
AT 9:09 O'CLOCK A M

APR 25 2013

LAURA HINOJOSA CLERK
District Courts, Hidalgo County
By_____Deputy#17

CAUSE NO. C-1442-11-I

| | | |
|---|---|---|
| GERALDO GONZALEZ, | § | IN THE DISTRICT COURT |
| *Plaintiff* | § | |
| | § | |
| VS. | § | HIDALGO COUNTY, TEXAS |
| | § | |
| DANIEL E. ARNOLD, | § | |
| *Defendant* | § | 398TH JUDICIAL DISTRICT |

## CHARGE OF THE COURT

LADIES AND GENTLEMEN OF THE JURY:

This case is submitted to you by asking questions about the facts, which you must decide from the evidence you have heard in this trial. You are the sole judges of the credibility of the witnesses and the weight to be given their testimony, but in matters of law, you must be governed by the instructions in this charge. In discharging your responsibility on this jury, you will observe all the instructions which have previously been given you. I shall now give you additional instructions which you should carefully and strictly follow during your deliberations.

1. Do not let bias, prejudice or sympathy play any part in your deliberations.

2. In arriving at your answers, consider only the evidence introduced here under oath and such exhibits, if any, as have been introduced for your consideration under the rulings of the court, that is, what you have seen and heard in this courtroom, together with the law as given you by the court. In your deliberations, you will not consider or discuss anything that is not represented by the evidence in this case.

3. Since every answer that is required by the charge is important, no juror should state or consider that any required answer is not important.

4. You must not decide who you think should win, and then try to answer the questions accordingly. Simply answer the questions, and do not discuss nor concern yourselves with the effect of your answers.

5. You will not decide the answer to a question by lot or by drawing straws, or by any other method of chance. Do not return a quotient verdict. A quotient verdict means that the jurors agree to abide by the result to be reached by adding together each juror's figures and dividing by the number of jurors to

124

get an average. Do not do any trading on your answers; that is, one juror should not agree to answer a certain question one way if others will agree to answer another question another way.

6. Unless otherwise instructed, you may answer a question upon the vote of ten or more jurors. If you answer more than one question upon the vote of ten or more jurors, the same group of at least ten of you must agree upon the answers to each of those questions.

These instructions are given you because your conduct is subject to review the same as that of the witnesses, parties, attorneys and the judge. If it should be found that you have disregarded any of these instructions, it will be jury misconduct and it may require another trial by another jury; then all of our time will have been wasted.

"Negligence" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

"Ordinary care" means that degree of care that would be used by a person of ordinary prudence under the same or similar circumstances.

With respect to the condition of the premises, Daniel E. Arnold and L&M Companies were negligent if –

a. the condition posed an unreasonable risk of harm, and
b. Daniel E. Arnold and L&M Companies knew or reasonably should have known of the danger, and
c. Daniel E. Arnold and L&M Companies failed to exercise ordinary care to protect Gerardo Gonzalez from the danger, by both failing to adequately warn Gerardo Gonzalez of the condition and failing to make the condition reasonably safe.

"Ordinary care" when used with respect to Daniel E. Arnold and L&M Companies as owners or occupiers of the premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances.

"Proximate cause" means a cause that was a substantial factor in bringing about an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using *ordinary care* would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

The presiding juror or any other who observes a violation of the court's instructions shall immediately warn the one who is violating the same and caution the juror not to do so again.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

Answer "Yes" or "No" to all questions unless otherwise instructed. A "Yes" answer must be based on a preponderance of the evidence unless you are otherwise instructed. If you do not find that a preponderance of the evidence supports a "Yes" answer, then answer "No." The term "preponderance of the evidence" means the greater weight and degree of credible evidence admitted in this case. Whenever a question requires an answer other than "Yes" or "No," your answer must be based on a preponderance of the evidence unless you are otherwise instructed.

After you retire to the jury room, you will select your own presiding juror. The first thing the presiding juror will do is to have this complete charge read aloud and then you will deliberate upon your answers to the questions asked.

It is the duty of the presiding juror —

1.    to preside during your deliberations,

2.    to see that your deliberations are conducted in an orderly manner and in accordance with the instructions in this charge,

3.    to write out and hand to the bailiff any communications concerning the case that you desire to have delivered to the judge,

4.    to vote on the questions,

5.    to write your answers to the questions in the spaces provided, and

6.    to certify to your verdict in the space provided for the presiding juror's signature or to obtain the signatures of all the jurors who agree with the verdict if your verdict is less than unanimous.

You should not discuss the case with anyone, not even with other members of the jury, unless all of you are present and assembled in the jury room. Should anyone attempt to talk to you about the case before the verdict is returned, whether at the courthouse, at your home, or elsewhere, please inform the judge of this fact.

When you have answered all the questions you are required to answer under the instructions of the judge and your presiding juror has placed your answers in the spaces provided and signed the verdict as presiding juror or obtained the signatures, you will inform the bailiff at the door of the jury room that you have reached a verdict, and then you will return into court with your verdict.

Signed on this the 25th day of April, 2013 at _10:20. am_

_[signature]_
JUDGE PRESIDING

## QUESTION 1

Did the negligence, if any, of those named below proximately cause the occurrence in question?

Answer "Yes" or "No" for each of the following:

| | | |
|---|---|---|
| a. | Daniel E. Arnold | Yes |
| b. | L&M Companies, Inc. | No |
| c. | Stephen Miller d/b/a MECO | No |
| d. | Gerardo Gonzalez | Yes |
| e. | AW Produce Co., Inc. | Yes |

128

If you have answered "Yes" to Question 1 for more than one of those named below, then answer the following question. Otherwise, do not answer the following question.

The percentages you find must total 100 percent. The percentages must be expressed in whole numbers. The negligence attributable to any one named below is not necessarily measured by the number of acts or omissions found. The percentage attributable to any one need not be the same percentage attributed to that one in answering another question.

## QUESTION 2

What percentage of the negligence that caused the occurrence do you find to be attributable to each of those listed below and found by you, in your answer to Question 1, to have been negligent?

|     |                              |           |
|-----|------------------------------|-----------|
| a.  | Daniel E. Arnold             | 65        |
| b.  | L&M Companies, Inc.          | 0         |
| c.  | Stephen Miller d/b/a MECO    | 0         |
| d.  | Gerardo Gonzalez             | 15        |
| e.  | AW Produce Co., Inc.         | 20        |
|     | Total                        | 100     % |

129

Answer Questions 3 if you answered "Yes" to any part of Question 1 and answered:

(1)     "No" for Gerardo Gonzalez to Question 1, or

(2)     50 percent or less for Gerardo Gonzalez to Question 2.

Otherwise, do not answer any more questions.

## QUESTION 3

What sum of money, if paid now in cash, would fairly and reasonably compensate Gerardo Gonzalez for his injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Gerardo Gonzalez.

a.     Physical pain sustained in the past.

Answer: ~~$ 500,000.00~~ $ 600,000.00

b.     Physical pain that, in reasonable probability, Gerardo Gonzalez will sustain in the future.

Answer: $ 200,000.00

c.     Mental anguish sustained in the past.

Answer: ~~$ 1,050,000.00~~ $ 600,000.00

d.     Mental anguish that, in reasonable probability, Gerardo Gonzalez will sustain in the future.

Answer: $ 150,000.00

e.     Lost wages sustained in the past.

130

Answer: $50,000.⁰⁰

f.  Loss of earning capacity that, in reasonable probability, Gerardo Gonzalez will sustain in the future.

Answer: $465,000.⁰⁰

g.  Physical impairment sustained in the past.

Answer: $200,000.⁰⁰

h.  Physical impairment that, in reasonable probability, Gerardo Gonzalez will sustain in the future.

Answer: $100,000.⁰⁰

i.  Disfigurement incurred in the past.

Answer: $250,000.⁰⁰

j.  Disfigurement that, in reasonable probability, Gerardo Gonzalez will incur in the future.

Answer: $0

131

Answer the following question regarding Daniel E. Arnold only if you unanimously answered "Yes" to Qustion 1. Otherwise, do not answer the following question regarding Daniel E. Arnold.

To answer "Yes" to the following question, your answer must be unanimous. You may answer "No" to the following question only upon a vote of ten or more jurors. Otherwise you must not answer the following question.

## QUESTION 4

Do you find by clear and convincing evidence that the harm to Gerardo Gonzalez resulted from gross negligence attributable to Daniel E. Arnold?

"Clear and convincing evidence" means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

"Gross negligence" means an act or omission by Daniel E. Arnold,

(a)    which when viewed objectively from the standpoint of Daniel E. Arnold at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(b)    of which Daniel E. Arnold has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Answer "Yes" or "No."

Answer: _____

132

Answer the following question only if you unanimously answered "Yes" to Question 4. Otherwise, do not answer the following question.

## QUESTION 5

You are instructed that you must unanimously agree on the amount of any award of exemplary damages.

What sum of money, if any, should be assessed against Daniel E. Arnold and awarded to Gerardo Gonzalez as exemplary damages for the conduct found in response to Question 4?

"Exemplary damages" means any damages awarded as a penalty or by way of punishment but not for compensatory purposes. Exemplary damages includes punitive damages.

Factors to consider in awarding exemplary damages, if any, are —

      a.     The nature of the wrong.

      b.     The character of the conduct involved.

      c.     The degree of culpability of the wrongdoer.

      d.     The situation and sensibilities of the parties concerned.

      e.     The extent to which such conduct offends a public sense of justice and propriety.

      f.     The net worth of Daniel E. Arnold.

Answer in dollars and cents, if any.


Answer: _____

133

## CERTIFICATE

We, the jury, have answered the above and foregoing questions as herein indicated, and herewith return same into court as our verdict.

I certify that the jury was unanimous in answering the following questions:

Answer "All" or list questions: _2, 3_

_Moot_
_____
PRESIDING JUROR
Monica Uribe
_____
Printed Name of Presiding Juror

(If the answers to some questions were not unanimous, the jurors who agreed to those answers must certify as follows:)

We agree to the answers to the following questions:

List questions: _1_

| Jurors' Signatures | Jurors' Printed Names |
|---|---|
| *Patricia Suarez* | Patricia Suarez |
| *Reynaldo Rodriguez* | REYNALDO RODRIGUEZ |
| *Raul Gonzalez Jr.* | Raul Gonzalez Jr. |
| *Guadalupe M. Salinas* | Guadalupe M. Salinas Jr. |
| *Noemi D. Lopez* | Noemi D. Lopez |
| *Rosa Herrera* | Rosa Herrera |
| *Daniel Iturrubiate* | Daniel Iturrubiate |
| *Yvette Trevino* | Yvette Trevino |
| *Laura Liza Sauceda* | Laura Liza Sauceda |
| *Hilda Aleman* | Hilda Aleman |

134

# APPENDIX
# Tab 3

2015 WL 5109757
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION
AND SIGNING OF OPINIONS.

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Daniel E. Arnold, Appellant,
v.
Gerardo Gonzalez, Appellee.

NUMBER 13–13–00440–CV | Delivered and filed
August 28, 2015

On appeal from the 398th District Court of Hidalgo
County, Texas.

**Attorneys and Law Firms**

Wade C. Crosnoe, Robert E. Valdez, for Appellant

John G. Escamilla, Arturo Martinez, for Appellee
Before Chief Justice Valdez and Justices Garza and
Perkes

**MEMORANDUM OPINION**

Memorandum Opinion by Chief Justice Valdez

**\*1** Appellant, Daniel E. Arnold, appeals the judgment in
favor of appellee, Gerardo Gonzalez. By four issues,
Arnold contends: (1) Gonzalez's suit against him is barred
by the Workers' Compensation Act; (2) the trial court
abused its discretion when it refused to submit his
requested jury question regarding the right to control; (3)
the evidence is legally and factually insufficient to
support the jury's award of damages for Gonzalez's loss
of future earning capacity; and (4) the trial court erred in
imposing joint and several liability on Arnold for
damages caused by Gonzalez's employer. We affirm.

**I. BACKGROUND**

Gonzalez performed maintenance on forklifts for A–W
Produce Company ("AW"). Arnold is the president of
AW. Gonzalez injured his arm while working as an
employee of AW. On the morning of the accident, Javier
Luna, an AW supervisor, asked Gonzalez to help another
employee, Jesus Montelongo, set up a section of a
conveyor belt, which was located on property owned by
Arnold. There was no guard on the belt because the set-up
of the belt had not yet been completed. Gonzalez reached
for a wrench and his hand got caught in the conveyor belt.
Gonzalez broke his forearm in several places and
sustained severe injuries requiring skin grafts. It is
undisputed that Gonzalez's injury was covered by
workers' compensation.

Gonzalez filed negligence and premises liability claims
against Arnold, among other defendants. Evidence
adduced at trial indicated that Arnold owned the
warehouse where Gonzalez was injured and personally
designed and assembled heavy machinery at the property
including several conveyors. There is disputed evidence
regarding whether AW leased the property from Arnold,
but it is undisputed that Arnold owns the property where
Gonzalez was injured. The evidence showed that much of
the heavy machinery had never been moved since it had
been installed. Gonzalez claimed that the emergency
cut-off switch was located on the opposite wall from the
conveyor belt and that the distance from the belt to the
switch, in part, caused his injuries.

Arnold moved for summary judgment, arguing that under
the Texas Labor Code section 408.001(a), the Texas
Workers' Compensation Act ("TWCA"), worker's
compensation was Gonzalez's exclusive remedy for a
work-related injury. *See* TEX. LAB.CODE ANN. §
408.001(a) (West, Westlaw through Ch. 46 2015 R.S.).
Gonzalez responded that he was not suing Arnold in his
capacity as his employer but only in his capacity as the
premises owner.

At the jury trial, the trial court granted Gonzalez's motion
in limine regarding any mention of workers'
compensation. The parties stipulated that (1) Gonzalez
was acting in the course and scope of his employment, (2)
AW was a subscriber under the TWCA, and (3) Gonzalez
received worker's compensation benefits for his injuries.
The trial court denied Arnold's request to include a jury
question on whether Arnold exercised or retained control
over the manner in which the work was performed. The
jury found that Arnold was negligent and that he was
sixty-five percent responsible for Gonzalez's injuries. The
jury also found AW twenty percent responsible as a
designated responsible third party. The trial court made

Arnold jointly and severally liable for all of the damages attributable to AW. The jury awarded $2,614,000 in past and future damages, including $465,000 in lost future earning capacity. Arnold filed a motion for judgment notwithstanding the verdict and motion for new trial. Both were denied. This appeal ensued.

## II. EXCLUSIVITY OF REMEDY UNDER WORKERS' COMPENSATION ACT

**\*2** By his first issue, Arnold contends that as a matter of law he was an employee of AW; thus, because Gonzalez received workers' compensation benefits, Gonzalez's suit against him is prohibited by the exclusivity provision of 408.001(a) of the TWCA, which provides that recovery of workers' compensation benefits is the exclusive remedy against the employer or an agent or employee of the employer for the death of, or a work-related injury sustained by, the employee. *See* TEX. LAB.CODE ANN. § 408.001(a). Gonzalez responds that whether Arnold was in fact an employee of AW was disputed at trial, Arnold failed to request a jury question on the issue, and therefore, Arnold has waived his affirmative defense that workers' compensation exclusivity applies.

"Recovery of workers' compensation benefits is the sole remedy of an injured employee covered by workers' compensation insurance against the employer, agent of the employer, or employee of the employer, absent an intentional act to harm or gross negligence by the employer." *Burkett v. Welborn,* 42 S.W.3d 282, 287 (Tex.App.— Texarkana 2001, no pet.) (citing Tex. Lab.Code Ann. § 408.001(a); *Darensburg v. Tobey,* 887 S.W.2d 84, 86–87 (Tex.App.—Dallas 1994, writ denied)). A co-employee accused of negligent conduct is exempt from tort actions by the exclusive remedy provision, and the immunity of the employer extends to co-employees. *Burkett,* 42 S.W.3d at 287; *see also Lockett v. HB Zachry Co.,* 285 S.W.3d 63, 75 (Tex.App.—Houston [1st Dist.] 2009, no pet.) (concluding that the employer was immune from premises liability cause of action because employee had received workers' compensation). However, Texas courts have determined that section 408.001's reference to "employee of the employer" includes only an employee for whose conduct the employer is legally responsible under the doctrine of respondeat superior. *Burkett,* 42 S.W.3d at 288–89; *Darensburg,* 887 S.W.2d. at 86–87 (explaining that in Texas, "[a]n 'agent, servant, or employee' within the meaning of Section 3(a) of the workers' compensation statute is one for whose conduct the employer would be legally responsible under the doctrine of respondeat superior"); *see also Long v.*

*Turner,* 871 S.W.2d 220, 223 (Tex.App.—El Paso 1993, writ. denied) ("In addressing the meaning of the former 'exclusive remedy' statute, the Supreme Court has found that an agent, servant, or employee within the meaning of the statute is ordinarily one for whose conduct the employer would, aside from the Workmen's Compensation Act, be legally responsible under the doctrine of respondeat superior.") (citing *McKelvy v. Barber,* 381 S.W.2d 59, 62 (Tex.1964)). "In order to impose liability upon an employer for the negligence of his employee under the doctrine of respondeat superior, the acts of the employee must fall within the scope of the general authority of the employee and must be in furtherance of the employer's business and for the accomplishment of the object for which the employee was hired." *Long,* 871 S.W.2d at 224.

> Under the theory of respondeat superior ... an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment.... The employee's acts must be of the same general nature as the conduct authorized or incidental to the conduct authorized to be within the scope of employment.

*Goodyear Tire & Rubber Co. v. Mayes,* 236 S.W.3d 754, 757 (Tex.2007). For example,

> [i]n *Ward v. Wright,* 490 S.W.2d 223 (Tex.Civ.App.—Fort Worth 1973, no writ), two company employees, while on their lunch hour and not on employer business, were involved in a collision between their respective automobiles as they both were in the process of leaving the company parking lot. The Fort Worth Court of Appeals held that because it was "obvious that the parties' common employer would not, under the Respondeat superior doctrine, have been responsible for the negligence of either of the parties to the automobile collision[,]" the defendant driver [co-employee] was not immune from liability under the exclusive remedy provision [of the TWCA] (Article 8306, Section 3) and was not therefore entitled to a summary judgment.

**\*3** *Long,* 871 S.W.2d at 223–24.

Here, Gonzalez sued Arnold under a premises liability theory claiming that "[b]ecause of the negligent manner in which the warehouse [that Arnold owned and/or occupied] had been set up, designed, and operated, there

was no readily available way for him to avoid or minimize the serious injuries that ensued after he did become entangled [in the conveyor belt]."[1] Gonzalez further claimed the following:

> After acquiring the subject property, [Arnold] had negligently set up a network of machines, motors, electrical circuitry, and fixtures which he knew would be utilized by various individuals, including employees of various businesses. Although he had no expertise, Arnold designed the premises in a way that failed to properly account for the safety of his invitees and licensees, and which created [foreseeable] risks to individuals he knew would likely be on the property.

At trial, the issue of whether Arnold designed the warehouse's layout as part of his duties as AW's employee was contested by the parties.[2] Arnold insisted that when he set up the warehouse and installed the conveyers, he was acting in furtherance of AW's business and that his acts fell within the scope of his work duties for AW. However, Gonzalez disputed Arnold's assertions and presented evidence to the jury that impeached Arnold's credibility, such as evidence that Arnold had incorrectly stated in a lease agreement with L & M Companies and in a petition filed in a separate lawsuit by Arnold and AW that AW owned the premises. AW's status as a lessee of the warehouse was also contested by the parties. Arnold consistently claimed that he had leased the warehouse where Gonzalez had been injured to AW and that AW had control over the premises and was responsible for the premises' condition. However, on direct examination by Gonzalez, Arnold agreed that there was no documentation or lease showing that AW actually leased the premises from Arnold. Arnold claimed that he had an oral lease with AW's representative, who happened to be Arnold, regarding AW's duty to maintain the premises. And, Arnold stated that he, only as AW's employee and agent, was responsible for repairs on the premises. Gonzalez pointed out and Arnold agreed that Arnold also rented the premises to L & M Companies for a period of time and that the two had a written lease.

The trial court instructed the jury as follows: (1) "With respect to the condition of the premises, [Arnold was] negligent if ... the condition posed an unreasonable risk of harm and" Arnold "knew or reasonably should have known the danger, and" Arnold "failed to exercise

ordinary care to protect" Gonzalez "from the danger, by both failing to adequately warn" Gonzalez "of the condition and failing to make the condition reasonably safe"; and (2) " 'Ordinary care' when used with respect to [Arnold] ... as owners or occupiers of the premises, means that degree of care that would be used by an owner or occupier of ordinary prudence under the same or similar circumstances." Arnold did not request a jury question regarding whether he had set up the layout of the warehouse in furtherance of AW's business while acting in the course and scope of his employment as AW's agent or employee.

**\*4** Arnold argues that even if the evidence supports a finding that he owned the premises, so long as his claim that he was AW's employee was undisputed at trial, we must reverse the jury's verdict because Gonzalez received workers' compensation benefits making Arnold immune from suit. We disagree.

"The failure to request a jury instruction on an affirmative defense results in waiver of that ground by the party relying on it unless the issue was conclusively established." *XCO Prod. Co. v. Jamison,* 194 S.W.3d 622, 632 (Tex.App.—Houston [14th Dist.] 2006, pet. denied). "The [workers' compensation act's] exclusive remedy provision is an affirmative defense that the defendant must plead and prove." *Warnke v. Nabors Drilling USA, L.P.,* 358 S.W.3d 338, 343 (Tex.App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g) (citing *Exxon Corp. v. Perez,* 842 S.W.2d 629, 630–31 (Tex.1992); *AMS Const Co. v. K.H.K. Scaffolding Houston, Inc.,* 357 S.W.3d 30, 43 (Tex.App.—Houston [1st Dist.] 2011, no pet.)); *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 763 (Tex.App.—El Paso 2000, no pet.) (explaining that the failure to request and tender a proper jury charge on the issue, waives any complaint relating to an affirmative defense on appeal).

Here, Arnold's credibility was at issue, and the evidence was contested regarding whether Arnold acted in furtherance of AW's interests when he committed the alleged negligent acts.[3] Arnold did not request a question in the jury charge concerning whether he was acting in furtherance of AW's interests when he set up the warehouse's layout and installed the conveyor. Given that the evidence was contested that Arnold was acting in furtherance of AW's interest when he allegedly committed the negligent acts or omissions, we are unable to conclude that the evidence conclusively established that Arnold was AW's agent or employee within the meaning of the TWCA. See *Burkett,* 42 S.W.3d at 288–89 (defining the term "employee of the employer" as an employee for whose conduct the employer is legally

responsible under the doctrine of respondeat superior); *Darensburg,* 887 S.W.2d at 86–87. Moreover, in this case, whether Arnold was acting in furtherance of AW's interests is a question of fact as it was contested at trial. *See Arbelaez v. Just Brakes Corp.,* 149 S.W.3d 717, 720 (Tex.App.—Austin 2004, no pet.) (explaining that "course and scope of employment is generally a fact issue like negligence or proximate cause") (citing *GTE Sw., Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999); *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 515 (Tex.1995)); *see also Arrellano v. State Farm Fire & Cas. Co.,* 191 S.W.3d 852, 855 (Tex.App.— Houston [14th Dist.] 2006, no pet.) ("Whether an individual acts within the course and scope of employment is generally a question of fact when more than one inference may be drawn from the evidence.").

**\*5** Therefore, by not requesting a jury question regarding whether he was acting in furtherance of AW's interests, Arnold has not preserved his affirmative defense that the workers' compensation exclusive remedy provision applies in this case. See *Abraxas Petroleum Corp.,* 20 S.W.3d at 763; *see also Warnke,* 358 S.W.3d at 343 ("The [TWCA's] exclusive remedy provision is an affirmative defense that the defendant must plead and prove.") (citing *Exxon Corp.,* 842 S.W.2d at 630–31; *AMS Const. Co.,* 357 S.W.3d at 43).

Our conclusion is consistent with our sister court's opinion in *Burkett* which involved similar facts. 42 S.W.3d at 282. In that case, Kenneth Burkett was injured while performing work on a trailer home owned by his employer, but located on land owned individually by Rosalie Welborn, the sole-shareholder of the corporation employing Burkett. *Id.* at 285. Welborn was also employed as the president of the corporation. *Id.* Burkett received workers' compensation benefits as an employee of the corporation, and later brought a premises liability claim against Welborn. *Id.* at 286. The trial court granted summary judgment in favor of Welborn, ruling that Burkett's recovery under workers' compensation was a bar to further recovery. *Id.* On appeal, Welborn argued that the exclusive remedy available to Burkett against his co-employee is recovery of workers' compensation benefits. *Id.* at 288. In addressing this argument, the court noted that the exclusive remedy provision bars recovery against a co-employee only where the employer is legally responsible for the conduct under the doctrine of respondeat superior. *Id.* at 288–89. The court explained that although the corporation was responsible for the trailer home on Welborn's property, this did not "in itself distinguish her from the duties of [a] property owner[,]" owed to an invitee. *Id.* at 289. The court determined that the employer would not be responsible for Welborn's acts

or omissions as a property owner. *Id.* On that basis, the court held that the exclusive remedy provision did not bar Burkett's claim against Welborn and reversed the trial court's summary judgment granted in favor of Welborn. *Id.* at 290.

Like the premises owner in *Burkett,* Arnold's status as a co-employee does not bar Gonzalez's negligence claims, because AW would not be legally responsible for Arnold's acts or omission as a landowner under the doctrine of respondeat superior. *See Id.* Accordingly, we overrule Arnold's first issue.[4]

### III. JURY QUESTION

**\*6** By his second issue, Arnold contends that the trial court abused its discretion when it refused to submit his requested jury question regarding the right to control. Pursuant to Pattern Jury Charge 66.3, Arnold requested the following question:

> Did Daniel E. Arnold, Individually, exercise or retain some control over the manner in which the injury causing activity was performed, other than the right to order the work to start or stop or to inspect progress or receive reports?
>
> Answer "Yes" or "No."

Gonzalez responds that the trial court correctly denied Arnold's requested question because it is not applicable in this case.

A trial court's decision whether to submit a particular jury question is reviewed for an abuse of discretion. *Park N. Serv. Ctr., L.P. v. Applied Circuit Tech., Inc.,* 338 S.W.3d 719, 721 (Tex.App.—Dallas 2011, no pet.) (citing *Tex. Dep't of Human Servs. v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990); *Hen ry v. Masson,* 333 S.W.3d 825, 848–49 (Tex.App.—Houston [1st Dist.] 2010, no pet.)). An abuse of discretion occurs if the trial court acts in an arbitrary or unreasonable manner or acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241–42 (Tex.1985). A trial court must submit a properly requested jury question if the issue is raised by the pleadings and evidence and is necessary to enable the jury to render a verdict. TEX.R. CIV. P. 278; *Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166 (Tex.2002); *Park N. Serv. Ctr.,* L.P., 338 S.W.3d at 721. "A trial court may refuse to submit a question only if there is no evidence in the record to warrant its submission." *Park N. Serv. Ctr., L.P.,* 338 S.W.3d at 721

(citing *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992); *Exxon Corp. v. Perez,* 842 S.W.2d 629, 631 (Tex.1992) (per curiam); *Barnett v. Coppell N. Tex. Court, Ltd.,* 123 S.W.3d 804, 824 (Tex.App.—Dallas 2003, pet. denied)).

As Arnold points out in his reply brief, Pattern Jury Charge 66.3 applies to property owners. See *id.* However, a property owner is only entitled to such an instruction if the injury was caused by "the negligent activity of an independent contractor" or if the premises defect was created by an independent contractor's work.[5] *Braudrick v. Wal-Mart Stores, Inc.,* 250 S.W.3d 471, 476 (Tex.App.—El Paso 2008, no pet.); *see also* Tex. R. CIV. P. § 95.003). "An independent contractor has been defined as 'any person who, in the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control in respect to all its details.' " *Schievink v. Wendylou Ranch, Inc.,* 227 S.W.3d 862, 866 (Tex.App.— Eastland 2007, pet. denied) (quoting *Indus. Indem. Exch. v. Southard,* 160 S.W.2d 905, 907 (1942)). In making a determination regarding whether someone is an independent contractor, we consider several factors, which include the following:

> (1) the independent nature of his business; (2) his obligation to furnish necessary tools, supplies, and material to perform the job; (3) his right to control the progress of the work, except as to final results; (4) the time for which he is employed; and (5) the method of payment, whether by time or by the job.

**\*7** *Id.*

Arnold does not provide citation to the record regarding where the evidence raised the issue of AW's or Gonzalez's status as an independent contractor.[6] *See* TEX.R.APP. P. 38.1(i). Therefore, we cannot conclude that the trial court abused its discretion by determining that Pattern Jury Charge 66.3 is inapplicable under these circumstances. Arnold further argues, in his reply brief, that because there was evidence that he was the landlord and AW was the tenant, the trial court should have submitted his requested question to the jury. However, as stated above, Pattern Jury Charge 66.3 is required when there is evidence that an independent contractor has caused the negligent activity or premises defect, and Arnold has not provided any authority, and we find none, providing that in a landlord-tenant situation Pattern Jury Charge 66.3 is appropriate. Thus, we overrule Arnold's

second issue.

## VI. LOSS OF FUTURE EARNING CAPACITY

By his third issue, Arnold contends that there is no legally or factually sufficient evidence to support the jury's award of $465,000 in damages for lost future earning capacity.

### A. Standard of Review

The test for legal sufficiency is "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex.2005). We review the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not. *Id.* at 821–22, 827.

A no-evidence point will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003); *see City of Keller,* 168 S.W.3d at 810. Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact, and the legal effect is that there is no evidence. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983).

When considering a factual sufficiency challenge to a jury's verdict, courts of appeals must consider and weigh all of the evidence, not just that evidence which supports the verdict. *Mar. Overseas Corp. v. Ellis,* 971 S.W.2d 402, 406–07 (Tex.1998). A court of appeals can set aside the verdict only if it is so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust. *Id.* at 407.

### B. Applicable Law

**\*8** "Loss of future earning capacity is the plaintiffs diminished capacity to earn a living after the trial, which is always uncertain."[7] *Plainview Motels, Inc. v. Reynolds,* 127 S.W.3d 21, 35 (Tex.App.—Tyler 2003, pet. denied) (corrected op.). Due to its uncertainty, the jury has

considerable discretion in determining the amount of the plaintiff's future earning capacity. *Id.* (citing *Mclverv. Gloria,* 169 S.W.2d 710, 712 (1943); *Tri–State Motor Transit Co. v. Nicar,* 765 S.W.2d 486, 492 (Tex.App.—Houston [14th Dist.] 1989, no writ)). "To support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the jury to reasonably measure earning capacity in monetary terms." *Id.* at 35–36 (citing *Bonney v. San Antonio Transit Co.,* 325 S.W.2d 117, 121 (1959); *City of Houston v. Howard,* 786 S.W.2d 391, 395–96 (Tex.App.— Houston [14th Dist.] 1990, writ denied)). The jury may base its award of loss of future earning capacity damages on several factors that may affect a person's capacity to earn a living, including stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain. *Id.* (citing *Metropolitan Life Ins. Co. v. Haney,* 987 S.W.2d 236, 244 (Tex.App.—Houston [14th Dist.] 1999, pet. denied)). The plaintiff must provide evidence of his or her capacity to work prior to the injury and that his or her capacity was impaired as a result of the injury. *Id.* "In determining what evidence is sufficient to support a claim of loss of earning capacity, no general rule can be laid down, except that each case must be judged upon its peculiar facts, and the damages proved with that degree of certainty of which the case is susceptible." *Strauss v. Cont'l Airlines, Inc.,* 67 S.W.3d 428, 436 (Tex.App.—Houston [14th Dist.] 2002, no pet.).

## C. Discussion

Arnold acknowledges that Gonzalez presented evidence (1) that by working at two jobs the month before the accident, he earned a total of just over $2000, (2) of his employment records from his janitorial employer, ABM, from the ten-month period prior to the accident, and (3) "he could not return to the type of physical labor he was performing before the accident." However, Arnold claims that Gonzalez provided no evidence (1) that Gonzalez was unable to return to a less strenuous workload than prior to the accident and (2) "of his life expectancy or how long he would have continued working." Thus, Arnold argues that the jury was required to speculate about Gonzalez's future earning capacity.

At trial, Gonzalez testified that prior to the accident, he "worked two jobs most of the time" and that he does not feel like the same person anymore because he can no longer work and do things around his home that he used to be able to do such as cut the trees outside. Gonzalez stated that his doctors did not allow him to work for an entire year after the accident and that as he understood it,

he has not been authorized to go back to the type of work that he did prior to the accident. According to Gonzalez, he is no longer able to physically perform mechanical work like he did prior to the accident. Specifically, Gonzalez said, "No, I can't [hold the tools with the type of strength that I needed with my dominant arm the way I did before the] incident. I tried, but I can't hold the wrench or I can't hold the hammer. I just can't make a fist. This is all the movement that I can make, so I—it doesn't help me at all to work as I used to."

The trial court admitted two W–2 forms showing that in the month of January of 2010, Gonzalez made $943 at AW and $1116 as a janitor at another job site. Gonzalez testified that he was injured in February of 2010; therefore he could no longer work and received no further pay checks that year. However, prior to the accident, Gonzalez had planned on continuing working at both jobs and stated that he would have received a raise at AW had he continued working there. Gonzalez testified that prior to 2010, he had been working as a janitor for a few years.[8] Regarding his position as a janitor, the trial court admitted a checklist that Gonzalez signed when he started working with a particular janitorial company in 2009. The checklist included a requirement that Gonzalez be able to clean 3,500 square feet per hour; however, Gonzalez stated that he can no longer do so due to his injury.

**\*9** The trial court also admitted pictures of Gonzalez's arm, which depicted the scars of his injury, which appeared to be severe based on the amount of scarring.[9] Evidence was presented that when Gonzalez was injured, his arm was "hanging" off his body "like a rag" and that he had been hospitalized for thirty days. Gonzalez explained that one of the pictures showed where he had received a skin graft after he was injured and that another picture showed where skin had been removed from his leg to perform the skin graft. Gonzalez said that the doctors removed two skin grafts from the top of his leg and two from the bottom. According to Gonzalez, the process of removing the skin was almost as painful as when he injured his arm in the accident. Gonzalez showed his arm to the jury and demonstrated how much he was able to straighten his arm. Gonzalez testified that he cannot feel hot or cold on the surface of his grafted skin, but he does feel a lot of pain within the arm.

On cross-examination, Gonzalez testified that he had his mechanic's license and GED, which is a high school equivalency degree. Gonzalez said that prior to working at AW, he had worked for ten years at a steel company, then six months at a molding factory, then one year at a car rental company, and then he worked as a self-employed mechanic for approximately two years.

According to Gonzalez, while he worked as a mechanic, he helped his wife clean banks. Gonzalez worked as a fork-lift mechanic for AW for four months prior to his injury.

As stated above, Gonzalez provided evidence of his capacity to work prior to the injury, including evidence that he had worked as a janitor, at a steel company, a molding factory, and as a mechanic. Gonzalez also presented evidence that his capacity to work had been impaired as a result of the injury because he could no longer use his arm as he did prior to the accident and that he could no longer work as a mechanic or a janitor. *See Plainview Motels, Inc.,* 127 S.W.3d at 35.

Arnold further argues that the evidence is insufficient because Gonzalez merely showed that he worked at AW at minimum wage for a few months before the accident. However, Gonzalez testified about his extensive work history prior to the accident and prior to his employment at AW. Moreover, the trial court admitted Gonzalez's records of his prior employment as a janitor for the ten months prior to his employment with AW.[10] Thus, we conclude that Gonzalez introduced evidence sufficient to allow the jury to reasonably measure his earning capacity in monetary terms. *See Id.*

Arnold also complains that Gonzalez provided no evidence of his life expectancy. However, this Court has already determined that "proof of life expectancy is not required to recover lost future earnings" and that "the jury may reach its own conclusion on life expectancy based on evidence of the injured person's age, health and physical condition prior to the injury, and the permanence of the injury." *Borden Inc. v. Guerra,* 860 S.W.2d 515, 524–25 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

Arnold also argues that Gonzalez was required to show that he could not return to a less strenuous workload than he performed prior to the accident. The jury was asked to determine the amount of Gonzalez's loss of his future earning *capacity* if he had not been injured.[11] *See Strauss,* 67 S.W.3d at 435 ("Recovery for loss of earning capacity is not based on the actual earnings lost, but rather on the loss of capacity to earn money."); *see also Plainview Motels, Inc.,* 127 S.W.3d at 35. In other words, the jury examined several factors that they believed may have affected Gonzalez's earning capacity, including his stamina, efficiency, ability to work with pain, and the weakness and degenerative changes which naturally result from an injury and from long suffered pain and then determined how much he suffered in damages for that loss. See *Plainview Motels, Inc.,* 127 S.W.3d at 35.

**\*10** Gonzalez testified that he is unable to use his arm without feeling pain and that although he tried to use his arm, he was unable to do many of the things he could do prior to the accident. Gonzalez stated that he is right-handed, and due to the injury, he is in the process of learning to use his left hand for simple tasks but he does not have the coordination in his left arm that he had in his dominant right arm. Gonzalez testified that his past jobs have required the use of both arms, including being a mechanic and that after his injury, he can no longer perform the job duties of a mechanic because it is too difficult with only one uninjured arm. The evidence established that Gonzalez has worked in jobs which require a certain degree of strength and stamina and that Gonzalez no longer has the strength and stamina he had prior to the accident. Gonzalez's physical therapist, Fortino Gonzalez, testified that Gonzalez has permanently lost strength and flexibility in various muscles in his arm. And his physician, Donna Mery, M.D., testified that Gonzalez's injuries caused permanent damage which restricted his use of his right arm. Moreover, Gonzalez testified that he has attempted to perform other types of less strenuous work, but has been unable to earn a living. In addition, vocational rehabilitation therapist and life care planner, Viola Lopez, performed various vocational tests on Gonzalez resulting in her opinion that he was not employable in any competitive marketplace due to his injuries and skillset. In Lopez's assessment, Gonzalez can no longer perform physically demanding jobs like those he had previous to the accident and he does not have the skill set to compete for non-physical jobs. Therefore, Gonzalez presented sufficient evidence for the jury to base its award, and as no general rule can be laid down regarding how the jury makes its loss of future earning capacity damages award, except that each case must be judged upon its peculiar facts, we conclude that the evidence of damages in this case was sufficient to support the jury's award. See *Strauss,* 67 S.W.3d at 436 (explaining that in *Mclver v. Gloria,* 169 S.W.2d 710, 712 (Tex.1943), the court upheld "the jury's award of loss of earning capacity, even though the exact amounts of [the plaintiff's] past earnings were not shown, because the evidence of the nature and extent of his farming operations and the kind and amount of the crops he produced provided the jury with sufficient facts to determine the proper amount of damages."). We conclude that there is more than a scintilla of evidence to support the jury's finding on loss of future earning capacity. Thus, viewing the evidence in the light most favorable to the verdict, crediting any favorable evidence if a reasonable fact-finder could and disregarding any contrary evidence unless a reasonable fact-finder could not, we conclude that the evidence is legally sufficient to support the jury's award of damages for loss of future earning capacity. *City*

*of Keller,* 168 S.W.3d at 821–22, 827.

Next, Arnold argues that the evidence of the damages awarded to Gonzalez for loss of future earning capacity is factually insufficient because there was evidence, including, among other things, a videotape, showing that Gonzalez is still capable of performing physical work such as sweeping and lifting objects over his head. Arnold claims that Gonzalez admitted his involvement in constructing a house and garage on his land, and that he acquired a building permit listing himself as the contractor of that project. Arnold states that "[t]his evidence becomes overwhelming when weighed against Gonzalez's gap-riddled and sparse record of prior earnings."

We disagree with Arnold's interpretation of Gonzalez's testimony. Although Gonzalez stated that he and his wife are having a house and garage built on their property, he did not testify that he is building the structures himself. Gonzalez testified that he applied for a building permit and that the permit lists him as the contractor. However, Gonzalez denied that he was a contractor for the project and that the county had filled out the form that he merely signed. Moreover, Arnold has not pointed to any evidence in the record that Gonzalez's designation by the county as contractor on the building permit contradicts the evidence that he has suffered loss of his future earning capacity. Although Arnold emphasizes on appeal that the jury saw a video of Gonzalez sweeping and also lifting a screen door, he does not explain how these acts make the jury's finding that Gonzalez lost his future earning capacity so contrary to the overwhelming weight of the evidence that the verdict is clearly wrong and unjust,[12] especially given that Gonzalez testified that when he swept and lifted the screen door, he could not and did not use his right arm.[13] In addition, Dr. Mery viewed the videos and concluded that the videos did not show anything of medical significance in determining Gonzalez's impairment because the videos did not show the extent of pain Gonzalez experienced when he swept and lifted the screen door.

Next, Arnold argues that the evidence was factually insufficient because Gonzalez's damages for loss of future earning capacity was "not reduced to net present value or to account for taxes that Gonzalez would have paid on his earnings." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 18.091(a) (West, Westlaw through Ch. 46 2015 R.S.) (requiring claimant of loss of earnings to provide "evidence to prove the loss ... in the form of a net loss after reduction for income tax payments or unpaid tax liability pursuant to any federal income tax law"). However, "evidence of actual past-earnings is only one

factor which may be considered in determining lost earning capacity" and Gonzalez provided his tax forms and employment records that both included deductions for taxes. *Big Bird Tree Serv. v. Gallegos,* 365 S.W.3d 173, 179 (Tex.App.—Dallas 2012, pet. denied). Because Gonzalez's past-earnings were only one factor for the jury to consider and the trial court admitted evidence of Gonzalez's net income, we cannot conclude that the evidence is insufficient for this reason. *See Plainview Motels, Inc.,* 127 S.W.3d at 35; *Border Apparel–East, Inc. v. Guardian,* 868 S.W.2d 894, 897 (Tex.App.—El Paso 1993, no writ) ("The central question to the proper disposition of the instant appeal is not what Appellee actually earned prior to her injury, but what her capacity to earn a livelihood actually was, and to what extent that capacity has been impaired.").

**\*11** Accordingly, we conclude that the verdict is not so contrary to the overwhelming weight of the evidence that it is clearly wrong and unjust. *Mar. Overseas Corp.,* 971 S.W.2d at 407. Further, the evidence is legally sufficient to support the verdict. We overrule Arnold's third issue.

## V. JOINT AND SEVERAL LIABILITY

By his final issue, Arnold contends that the trial court erred in imposing joint and several liability on Arnold for damages caused by Gonzalez's employer, AW. Arnold explains that under the general rule, the proportionate-responsibility statute allows the claimant to collect from the defendant only the percentage of damages found by the trier of fact, with only one "even potentially applicable" exception under section 33.013(b), which provides that when the defendant's percentage of responsibility is greater than fifty percent, then the defendant is jointly and severally liable for the damages recoverable by the claimant under that section. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 33.013(b) (West, Westlaw through Ch. 46 2015 R.S.). Arnold argues that the jury found AW negligent and attributed twenty percent of the responsibility for the accident to AW; thus, because AW is immune from suit under the TWCA, the damages the jury attributed to AW are not "damages recoverable by the claimant" within the meaning of section 33.013(b) of the Texas Civil Practice and Remedies Code.

The San Antonio court of appeals in *Bay Rock Operating Co. v. St Paul Surplus Lines Insurance Co.,* cited by both parties, in interpreting section 33.013(b) stated that

> the plain language of section

33.013(b)(1) simply does not make the application of joint and several liability dependent upon whether or not another person, such as a responsible third party, can or will ultimately pay for its share of responsibility; the only requirement is that the liable defendant meets the threshold percentage of fault.

298 S.W.3d 216, 233 (Tex.App.—San Antonio 2009, pet. denied). In addition, the court explained that under the plain language of the statute, "If the threshold is met, a liable defendant bears not only its proportionate responsibility under section 33.013(a), but also assumes joint and several liability for all recoverable damages under section 33.013(b)(1)." *Id.* We find the *Bay Rock* court's interpretation of 33.013(b) persuasive, and agree that pursuant to section 33.013(b), so long as the threshold of more than fifty percent liability is met, then the defendant may be held jointly and severally liable, regardless of whether the responsible third party can or will pay for its share of responsibility. See *id.* at 232–233 (disagreeing with defendant's argument "that it is unfair for it to be held jointly and severally liable for all damages when another person has been assigned a

percentage of responsibility, especially in those instances where, as here, the defendant is precluded from seeking contribution from the responsible third party").

Therefore, here although it appears that AW cannot or will not ultimately pay for its share of its responsibility due to the TWCA's immunity clause, under section 13.013(b), it does not matter. Arnold is still jointly and severally liable because the jury attributed sixty-five percent of the liability to him; thus, the threshold percentage of fault has been met. We overrule Arnold's final issue.

## VI. CONCLUSION

**\*12** We affirm the trial court's judgment.

**All Citations**

Not Reported in S.W.3d, 2015 WL 5109757

Footnotes

1    Gonzalez also sued L & M Companies, claiming it too occupied the premises where Gonzalez had been injured. L & M had leased a portion of the facility from Arnold.

2    It was Arnold's burden at trial to prove his affirmative defense of the TWCA's exclusive remedy provision. Therefore, our analysis is the same whether Arnold claims to be AW's employee or agent.

3    In his brief, Arnold does not argue that he acted in furtherance of AW's interests when he designed the layout of the warehouse. Instead, he claims that it was undisputed that he was AW's employee or agent as a matter of law. In his reply brief, Arnold states that it was undisputed that he undertook all actions regarding the warehouse in his capacity as AW's agent or employee because that is the only evidence that was presented. We disagree because whether he was acting in furtherance of his duties as an AW employee is a question of fact for the jury to have determined. Thus, they were free to believe or disbelieve Arnold that he set up the warehouse in furtherance of AW's interests and not because he planned on leasing the premises to other companies such as L & M. *See Arbelaez v. Just Brakes Corp.,* 149 S.W.3d 717, 720 (Tex.App.—Austin 2004, no pet) (citing *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 618 (Tex.1999); *Tex. Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 515 (Tex.1995)). Moreover, there was evidence that Arnold designed the configuration of the complained-of mechanisms and that those machines, which included a processing line conveyor, were fixed in place in the warehouse for years and attached to mechanized pieces of equipment that were affixed to the walls of the warehouse and bolted to the floors— acts that a jury could have believed were undertaken in order to rent the facility to other entities.

4    Arnold also argues that by holding him responsible for Gonzalez's injury, the trial court, in essence, applied the dual capacity doctrine, which has not been adopted by the Texas Supreme Court and has been rejected by some Texas courts of appeals. The dual capacity doctrine provides that although an employer is usually shielded from tort liability by the exclusive remedy principle of the TWCA, the employer may become liable to his own employee, who received workers' compensation benefits, if the employer occupies a second capacity that generates obligations unrelated to those flowing from its primary capacity as an employer. *Payne v. Galen Hosp. Corp.,* 28 S.W.3d 15, 20 (Tex.2000). The dual capacity doctrine is applicable in cases where the employer/defendant is entitled to claim immunity from suit under the TWCA. *See id.*

We disagree with Arnold that this case implicates the dual capacity doctrine because Arnold did not show that he is entitled to immunity under the TWCA as explained above. It was not conclusively established that Arnold was acting as an 'agent, servant, or employee' within the meaning of the TWCA for whose conduct AW would have been legally responsible under the doctrine of respondeat superior. *See Burkett v. Welborn,* 42 S.W.3d 282, 288–89 (Tex.App.—Texarkana 2001, no pet.) (concluding that coemployee who owned premises was not entitled to the workers' compensation defense because there was no evidence that the employer could be held vicariously liable for the co-employee's liability as a premises owner to an invitee). Thus, the dual capacity doctrine is inapplicable to the facts of this case.

5   Arnold testified that he owned the premises where Gonzalez was injured and that AW was his lessee. Arnold makes no argument on appeal that AW was an independent contractor and points to no evidence in the record supporting such a conclusion.

6   *See Schievink v. Wendylou Ranch, Inc.,* 227 S.W.3d 862, 867 (Tex.App.— Eastland 2007, pet. denied) ("One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.").

7   Earning capacity has been defined as the "ability and fitness to work in gainful employment for any type of remuneration, including salary, commissions, and other benefits, whether or not the person is actually employed." *Strauss v. Cont'l Airlines, Inc.,* 67 S.W.3d 428, 435 (Tex.App.—Houston [14th Dist.] 2002, no pet.).

8   Gonzalez testified that he was forty-nine at the time of the accident.

9   The trial court admitted Gonzalez's medical records, and Gonzalez testified that he had five surgeries after the accident and that amputation had been discussed.

10   Arnold complains that these employment records are mostly illegible. However, our appellate record consists of copies. The original employment records that were admitted at trial have not been included in the appellate record. We are able to read some of the copies of Gonzalez's employment records included in the appellate record.

11   Moreover, there was conflicting evidence regarding whether Gonzalez is able to perform any type of work, including less strenuous work.

12   Gonzalez presented evidence to show that he is unable to perform other less strenuous jobs, and Arnold points to no evidence in the record showing that someone who can sweep and who can lift a screen door is necessarily able to perform other more strenuous jobs.

13   The video is not included in the appellate record, and Arnold does not complain of its omission. The record contains a description of Gonzalez's acts in the video, however.

**End of Document**                                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.



# THE THIRTEENTH COURT OF APPEALS

13-13-00440-CV

DANIEL E. ARNOLD
v.
GERARDO GONZALEZ

On Appeal from the
398th District Court of Hidalgo County, Texas
Trial Cause No. C-1442-11-I

## **AMENDED CORRECTED JUDGMENT**

THE THIRTEENTH COURT OF APPEALS, having considered this cause on appeal, concludes that the judgment of the trial court should be AFFIRMED. The Court orders the judgment of the trial court AFFIRMED. Costs of the appeal are adjudged against the appellant, DANIEL E. ARNOLD, and ARCH INSURANCE COMPANY, as surety on the supersedeas bond, and judgment is rendered against the appellant, DANIEL E. ARNOLD, and ARCH INSURANCE COMPANY, as surety on the supersedeas bond.

We further order this decision certified below for observance.

August 28, 2015

# APPENDIX
# Tab 4

LABOR CODE

TITLE 5. WORKERS' COMPENSATION

SUBTITLE A. TEXAS WORKERS' COMPENSATION ACT

CHAPTER 408. WORKERS' COMPENSATION BENEFITS

SUBCHAPTER A. GENERAL PROVISIONS

Sec. 408.001.  EXCLUSIVE REMEDY;  EXEMPLARY DAMAGES.  (a)  Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee.

(b)  This section does not prohibit the recovery of exemplary damages by the surviving spouse or heirs of the body of a deceased employee whose death was caused by an intentional act or omission of the employer or by the employer's gross negligence.

(c)  In this section, "gross negligence" has the meaning assigned by Section 41.001, Civil Practice and Remedies Code.

(d)  A determination under Section 406.032, 409.002, or 409.004 that a work-related injury is noncompensable does not adversely affect the exclusive remedy provisions under Subsection (a).

Acts 1993, 73rd Leg., ch. 269, Sec. 1, eff. Sept. 1, 1993.
Amended by:
Acts 2005, 79th Leg., Ch. 265, Sec. 3.077, eff. September 1, 2005.

# APPENDIX
# Tab 5

CAUSE NO. C-1442-11-I

| GERARDO GONZALEZ, | § | IN THE DISTRICT COURT |
| Plaintiff | § | |
| | § | |
| VS. | § | 398th JUDICIAL DISTRICT |
| | § | |
| | § | |
| | § | |
| DANIEL E. ARNOLD, | § | |
| Defendants | § | HIDALGO COUNTY, TEXAS |

FILED
AT ___ O'CLOCK ___ M
APR 19 2013
___ HINOJOSA, CLERK
District Court, Hidalgo County
By ___ Deputy

---

## DEFENDANT'S REQUESTED QUESTION REGARDING PREMISES LIABILITY BASED ON NEGLIGENT ACTIVITY OR PREMISES DEFECT— RIGHT OF CONTROL

---

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant, Daniel Arnold, individually, requests that the following be included in the Court's Charge to the Jury:

QUESTION_____

Did Daniel E. Arnold, Individually, exercise or retain some control over the manner in which the injury causing activity was performed, other than the right to order the work to start or stop or to inspect progress or receive reports?

Answer "Yes" or "No."

Answer: _____

Authority:    Premises Liability Based on Negligent Activity or Premises Defect— Right of Control  PJC 66.3

121

SCANNED

Respectfully submitted,

Robert E. Valdez

RAY, VALDEZ, MCCHRISTIAN & JEANS, P.C.
1250 N.E. Loop 410, Ste. 700
San Antonio, Texas 78209
Phone: 210-341-3554
Fax: 210-341-3557

**ATTORNEYS FOR DEFENDANT
DANIEL E. ARNOLD, INDIVIDUALLY**

## CERTIFICATE OF SERVICE

The foregoing has been served upon counsel of record pursuant to Rule 21a, Texas Rules of Civil Procedure on this _19th_ day of _April_ 2013.

Robert E. Valdez

122

2

The foregoing having been presented to me before the Court's presentation of its Charge of the Court to the jury, is hereby:

GRANTED: _____

DENIED: _____X_____

MODIFIED: _____

SIGNED THIS ___25___ DAY OF _April_, 2013

_____
Judge Presiding

123

3